**UNITED STATES DISTRICT COURT**

**DISTRICT OF NORTH DAKOTA, EASTERN DIVISION**

| | |
|---|---|
| Breanna Berndsen, Kristen Elizabeth Joyce Campbell, Charly Dahlquist, Taylor Flaherty, Ryleigh Houston, Anna Kilponen, Rebekah Kolstad, Sarah LeCavalier, Alyssa MacMillan, Annelise Rice, and Abigail Stanley, | Civil Action No.: _____ **CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |
| Plaintiffs, | |
| v. | |
| The North Dakota University System, | |
| Defendant. | |

For their Complaint against Defendant The North Dakota University System ("University"), Plaintiffs Breanna Berndsen, Kristen Elizabeth Joyce Campbell, Charly Dahlquist, Taylor Flaherty, Ryleigh Houston, Anna Kilponen, Rebekah Kolstad, Sarah LeCavalier, Alyssa MacMillan, Annelise Rice, and Abigail Stanley, ("Plaintiffs") file this action individually and on behalf of a class of all similarly situated females. They state as follows:

1

**INTRODUCTION**

1.      Plaintiffs, former members of the women's ice hockey team at the University of North Dakota ("UND"), file this case as a class action on behalf of themselves and on behalf of a class of the University's current, prospective, and future female students who are harmed by the University's sex discrimination, particularly as they relate to its elimination of the intercollegiate women's ice hockey program at the University of North Dakota at the end of the 2016-17 season.

2.      Plaintiffs bring this action to remedy the University's Title IX violations, particularly as they relate to its elimination of the intercollegiate women's ice hockey program at the University of North Dakota at the end of the 2016-17 season.

3.      Title IX of the Education Amendments of 1972 ("Title IX") was enacted in part to provide girls and women with a means to challenge gender inequity in public institutions. The University violated Title IX, its implementing regulations, and the Policy Interpretations issued by the Office for Civil Rights ("OCR") of the United States Department of Health, Education, and Welfare when

2

it failed to determine the athletic interests and abilities of women athletes before it eliminated the women's ice hockey program.

4.     Plaintiffs seek equitable relief, including declaratory and injunctive relief, plus attorneys' fees and costs, for the University's violations of plaintiffs' civil rights.

## JURISDICTION

5.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a) because this is an action to recover damages or secure equitable or other relief under Acts of Congress providing for the protection of civil rights, and further is a civil action arising under federal law, including Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

6.     Declaratory and other relief is authorized by 28 U.S.C. § 2201 and 28 U.S.C. § 2202 for obtaining a determination and declaration of the respective rights and duties of the parties.

## VENUE

7.     Venue is proper in the United State District Court for the District of North Dakota, Eastern Division, pursuant to 28

U.S.C. § 1391(b)(1) because the events giving rise to plaintiffs' claims occurred in this District, and the University of North Dakota is located in Grand Forks, North Dakota, in the Eastern Division of the District.

## PARTIES

8.    Plaintiff Breanna Berndsen, a resident of Kelowna, British Columbia, Canada, enrolled at the University of North Dakota in August 2015 and played on its women's intercollegiate ice hockey team during the 2015-16 and 2016-17 seasons. After the University eliminated the women's ice hockey team at the end of the 2016-17 season, Ms. Berndsen had three remaining years of eligibility under the rules and regulations of the National Collegiate Athletic Association ("NCAA"). Because of the elimination of the women's ice hockey program, Ms. Berndsen transferred to the University of Toronto, where she is a member of the women's intercollegiate ice hockey team.

9.    Plaintiff Kristen Elizabeth Joyce Campbell, a resident of Brandon, Manitoba, Canada, enrolled at the University of North

Dakota in August 2015 and played on its women's intercollegiate ice hockey team during the 2015-16 and 2016-17 seasons. After the University eliminated the women's ice hockey team at the end of the 2016-17 season, Ms. Campbell had three remaining years of eligibility under the rules and regulations of the National Collegiate Athletic Association ("NCAA"). Because of the elimination of the women's ice hockey program, Ms. Campbell transferred to the University of Wisconsin-Madison, where she is a member of the women's intercollegiate ice hockey team.

10.   Plaintiff Charly Dahlquist, a resident of Eden Prairie, Minnesota, enrolled at the University of North Dakota in June 2015 and played on its women's intercollegiate ice hockey team during the 2015-16 and 2016-17 seasons. After the University eliminated the women's ice hockey team at the end of the 2016-17 season, Ms. Dahlquist had two remaining years of eligibility under the rules and regulations of the National Collegiate Athletic Association ("NCAA"). Because of the elimination of the women's ice hockey program, Ms. Dahlquist transferred to Ohio State University, where she is a member of the women's intercollegiate ice hockey team.

11.   Plaintiff Taylor Flaherty, a resident of Lakeville, Minnesota, enrolled at the University of North Dakota in June 2015 and played on its women's intercollegiate ice hockey team during the 2015-16 and 2016-17 seasons. After the University eliminated the women's ice hockey team at the end of the 2016-17 season, Ms. Flaherty had two remaining years of eligibility under the rules and regulations of the National Collegiate Athletic Association ("NCAA"). Because of the elimination of the women's ice hockey program, Ms. Flaherty transferred to the University of Vermont, where she is a member of the women's intercollegiate ice hockey team.

12.   Plaintiff Ryleigh Houston, a resident of Winnipeg, Manitoba, Canada, enrolled at the University of North Dakota in August 2016 and played on its women's intercollegiate ice hockey team during the 2016-17 season. After the University eliminated the women's ice hockey team at the end of the 2016-17 season, Ms. Houston had three remaining years of eligibility under the rules and regulations of the National Collegiate Athletic Association ("NCAA"). Because of the elimination of the women's ice hockey program, Ms. Houston transferred to the University of Minnesota

Duluth, where she is a member of the women's intercollegiate ice hockey team.

13.   Plaintiff Anna Kilponen, a resident of Orivesi, Finland, enrolled at the University of North Dakota in August 2015 and played on its women's intercollegiate ice hockey team during the 2015-16 and 2016-17 seasons. After the University eliminated the women's ice hockey team at the end of the 2016-17 season, Ms. Kilponen had two remaining years of eligibility under the rules and regulations of the National Collegiate Athletic Association ("NCAA"). Because of the elimination of the women's ice hockey program, Ms. Kilponen transferred to Quinnipiac University, where she is a member of the women's intercollegiate ice hockey team.

14.   Plaintiff Rebekah Kolstad, a resident of Mankato, Minnesota, enrolled at the University of North Dakota in June 2015 and played on its women's intercollegiate ice hockey team during the 2015-16 and 2016-17 seasons. After the University eliminated the women's ice hockey team at the end of the 2016-17 season, Ms. Kolstad had two remaining years of eligibility under the rules and regulations of the National Collegiate Athletic Association ("NCAA").

Because of the elimination of the women's ice hockey program, Ms. Kolstad transferred to Minnesota State University, Mankato, where she is a member of the women's intercollegiate ice hockey team.

15.   Plaintiff Sarah Lecavalier, a resident of Strathmore, Alberta, Canada, enrolled at the University of North Dakota in August 2016 and played on its women's intercollegiate ice hockey team during the 2016-17 season. After the University eliminated the women's ice hockey team at the end of the 2016-17 season, Ms. Lecavalier had three remaining years of eligibility under the rules and regulations of the National Collegiate Athletic Association ("NCAA"). Because of the elimination of the women's ice hockey program, Ms. Lecavalier transferred to Robert Morris University, where she is a member of the women's intercollegiate ice hockey team.

16.   Plaintiff Alyssa MacMillan, a resident of Penticon, British Columbia, Canada, enrolled at the University of North Dakota in August 2016 and played on its women's intercollegiate ice hockey team during the 2016-17 season. After the University eliminated the women's ice hockey team at the end of the 2016-17

season, Ms. MacMillan had three remaining years of eligibility under the rules and regulations of the National Collegiate Athletic Association ("NCAA"). Because of the elimination of the women's ice hockey program, Ms. MacMillan transferred to the University of Ottawa, where she is a member of the women's intercollegiate ice hockey team.

17.   Plaintiff Annelise Rice, a resident of Minneapolis, Minnesota, enrolled at the University of North Dakota in June 2016 and played on its women's intercollegiate ice hockey team during the 2016-17 season. After the University eliminated the women's ice hockey team at the end of the 2016-17 season, Ms. Rice had three remaining years of eligibility under the rules and regulations of the National Collegiate Athletic Association ("NCAA"). Because of the elimination of the women's ice hockey program, Ms. Rice took a year off from her studies.

18.   Plaintiff Abigail Stanley, a resident of Ballwin, Missouri, enrolled at the University of North Dakota in January 2016 and played on its women's intercollegiate ice hockey team during the 2016-17 season. After the University eliminated the women's ice

hockey team at the end of the 2016-17 season, Ms. Stanley had three remaining years of eligibility under the rules and regulations of the National Collegiate Athletic Association ("NCAA"). Because of the elimination of the women's ice hockey program, Ms. Stanley transferred to Boston University, where she is a member of the women's intercollegiate ice hockey team.

19.    Defendant North Dakota University System is a state public entity that owns and operates the University of North Dakota in Grand Forks, North Dakota.

20.    The North Dakota University System receives Federal financial assistance within the meaning of Section 901(a) of Title IX of the Education Amendments of 1972.

21.    Therefore, all of the University's programs and activities, including its intercollegiate athletics program, are subject to Title IX's requirements pursuant to 20 U.S.C. § 1687.

## CLASS ALLEGATIONS

22.   The named Plaintiffs bring this action on behalf of themselves and on behalf of a class of all those similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

### DEFINITION

23.   Plaintiffs seek to represent a class of all current, prospective, and future female students who are harmed by and want to end the University's sex discrimination and violation of Title IX as demonstrated by its repeated failure to determine the athletic interests and abilities of women students and women athletes before it eliminated the women's ice-hockey program.

24.   Plaintiffs also file this action on behalf of females who want to participate in varsity women's ice hockey at the University of North Dakota, or who want to participate in varsity sports eliminated or not offered by the University of North Dakota.

25.   Each of the named Plaintiffs is a member of the proposed class and has been or will be injured by the University's sex discrimination and violation of Title IX.

**NUMEROSITY**

26.   Plaintiffs seek to represent the proposed class because joinder of all class members and all persons harmed by the University's sex discrimination is not just impracticable, but impossible.

27.   It is presently unknown how many current female students at the University or how many prospective or future female students would participate, or seek to participate, in varsity women's sports, including women's ice hockey, if those opportunities and additional opportunities were available.   On information and belief, there are hundreds of additional class members who would apply to the University, who would be recruited by University coaches to attend the University, and who would participate in University athletics, including women's ice hockey if the athletic opportunities necessary to achieve equal opportunity were provided. These additional class members are too numerous to make joinder practicable.

28.   Joinder is also impracticable because of the inherently fluid nature of the proposed class.   Even though the proposed class

is known to exist, the identities of its members will change during this litigation due to the nature of college enrollment and athletic participation. The University has a constantly changing student body whose members graduate after approximately four years of enrollment. Its varsity student-athletes are allowed approximately four years of athletic eligibility under the rules of the National Collegiate Athletic Association ("NCAA"). Accordingly, the membership of the class harmed by the University's sex discrimination constantly changes as students graduate from the University and as new classes and groups of graduating high school students enroll as freshmen at the University.

### COMMON QUESTIONS OF FACT AND LAW

29. Plaintiffs satisfy the "commonality" requirement of Federal Rule of Civil Procedure 23(a)(2) because common questions of law and fact predominate, including whether the University engages in sex discrimination and violates Title IX by failing to (a) determine and equitably accommodate the athletic interests and abilities of women students and women athletes before it

eliminated the women's ice-hockey program (b) its deliberate manipulation of widely used numerical measures of equitable treatment of men and women students and athletes through the use of aggressive and deceptive roster management (c) and its continuing failure to provide female students and student athletes with an equal opportunity to participate in varsity intercollegiate athletics Because Title IX athletics claims require comparison of the sex-segregated men's and women's athletic opportunities as a whole, the issues are inherently class-based.

### TYPICALITY

30.   Plaintiffs satisfy the "typicality" requirement of Federal Rule of Civil Procedure 23(a)(3) because their claims are typical of the claims of the class. Each has been denied, or imminently will be denied because of Defendants' ongoing sex discrimination, an equal opportunity to participate in varsity athletics at the University in a sport that meets her interests and abilities, including but not limited to women's ice hockey. Each wants the Court to enjoin the University from eliminating any additional women's varsity sports opportunities, to reinstate the University's

women's ice hockey program, and to consistently offer a selection of women's varsity sports opportunities that equitably meets the interests and abilities of the University's female student athletes.

31.    All members of the proposed class are harmed by or imminently will be harmed by the ongoing sex discrimination in the University's varsity athletics program.

### ADEQUACY OF REPRESENTATION

32.    The undersigned class counsel are experienced in federal civil rights and class action litigation, and will adequately represent the interests of the class in this action.

## FACTUAL ALLEGATIONS

33.    Ice hockey is the most popular and prominent sport in the State of North Dakota. Many people, when asked to name the first thing that comes into their minds when they are asked about the University of North Dakota, answer "ice hockey."

34.    Increasing numbers of young women in North Dakota and throughout the Upper Midwest Region of the United States are

playing ice hockey at the high school and club levels and are seeking opportunities to play ice hockey at the intercollegiate level.

35.    Since about 1998, colleges and universities located in the Upper Midwest Region of the United States and in other parts of the country have accommodated the interests of young women by establishing women's intercollegiate ice hockey programs.

36.    The University of North Dakota established its men's intercollegiate ice hockey program in 1929 and its women's intercollegiate ice hockey program in 2002.

37.    At the time it eliminated its women's ice hockey program at the end of the 2016-17 season, the women's ice hockey program at UND was one of 35 women's ice hockey programs playing at the NCAA Division 1 level in the United States. Division 1 is the highest, most competitive NCAA level.

38.    At the time of its elimination, the UND women's ice hockey program competed in the eight-team Western Collegiate Hockey Association ("WCHA"), the strongest and most competitive women's ice hockey league in the United States. The UND women's

ice hockey program consistently ranked among the top four teams in the WCHA. It sent eight players to the 2014 Olympics.

39.    During its final, 2016-17 season, the UND women's ice hockey team ranked sixth in the nation.

40.    Prior to its elimination, the UND women's ice hockey program was the most prominent and popular sport among the women's athletic programs at UND.

41.    Pursuant to Title IX and its implementing regulation, 45 CFR Part 86, on December 11, 1979, the United States Department of Health, Education, and Welfare's Office for Civil Rights issued its Policy Interpretation to provide guidance to colleges and universities regarding compliance with Title IX in connection with intercollegiate athletic programs. Federal Register, Vol. 44, No. 239, pp. 71413-71423.

42.    The Policy Interpretation, at page 71417, requires that colleges and universities effectively accommodate student interests and abilities as set forth in 45 CFR § 86.41(c)(1), under which the Director of OCR must consider "Whether the selection of sports and

levels of competition effectively accommodate the interests and
abilities of members of both sexes."

43.   The policy further provides, under the heading,
"Application of the Policy - Determination of Athletic Interests and
Abilities, at page 71417, that:

> Institutions may determine the athletic interests and
> abilities of students by nondiscriminatory methods of
> their choosing provided:

> a. The processes take into account the nationally
>    increasing levels of women's interests and abilities;

> b. The methods of determining interest and ability do not
>    disadvantage the members of an underrepresented sex;

> c. The methods of determining ability take into account
>    team performance records; and

> d.  The methods are responsive to the expressed interests
>    of students capable of intercollegiate competition who
>    are members of an underrepresented sex.

44.    *Application of the Policy - Selection of Sports,* provides, at pages 71417-71418:

In the selection of sports, the regulation does not require institutions to integrate their teams nor to provide exactly the same choice of sports to men and women. However, where an institution sponsors a team in a particular sport for members of one sex, it may be required either to permit the excluded sex to try out for the team or to sponsor a separate team for the previous excluded sex.

a. Contact sports - Effective accommodation means that if an institution sponsors a team for members of one sex in a contact sport, it must do so for members of the other sex under the following circumstances:

(1) The opportunities for members of the excluded sex have historically been limited; and

> (2) There is sufficient interest and ability among the members of the excluded sex to sustain a viable team and a reasonable expectation of intercollegiate competition for that team.

45.   In making the decision to eliminate its women's ice hockey program, UND violated the OCR Policy Interpretation described above as follows:

(a) UND failed to consider the athletic interests and abilities of students, particularly the interests and abilities of female students to participate in intercollegiate ice hockey;

(b) UND failed to consider the high level of competition available for its women's ice hockey team if it had continued to play in the Western Collegiate Hockey Association (WCHA), the most competitive and successful women's ice hockey league in the United States;

(c) UND failed to consider the nationally and regionally increasing levels of women's interests and abilities to compete in ice hockey;

(d) UND failed to consider the performance records of its successful women's ice hockey team;

(e) UND failed to consider the fact that the opportunities for women to participate in intercollegiate ice hockey have been historically limited; and

(f) UND failed to consider the fact that there is sufficient interest and ability among its female students to sustain a viable team and more than a reasonable expectation of intercollegiate competition for that team.

(g) UND fails to provide its female students with proportionately equal opportunities to participate in intercollegiate athletics as compared with its male students, due to, among other things, its elimination of its women's ice hockey program, its improper

calculations of bona fide opportunities for female

participation in intercollegiate athletics, and its over-

reporting of the number of female athletes on teams.

**CLAIM FOR RELIEF**

**VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS
OF 1972, 20 U.S.C. § 1681, et seq.**

46.    By taking the actions described above, the University

violated plaintiffs' right to be free from sex discrimination, their

right to equitable treatment, and to be free from discrimination

based on their sex. Those rights include the right to equitable

participation in educational programs and activities, specifically

including athletic programs and activities.

47.    Had the University not eliminated its women's ice

hockey program, plaintiffs would have continued to participate in

that program to the extent of their continued eligibility to do so.

48.    Because of the foregoing conduct, the University

violated the plaintiffs' rights under Title IX of the Education

Amendments of 1972.

## DECLARATORY RELIEF ALLEGATIONS

49.    A present and actual controversy exists between plaintiffs and defendant concerning their rights and respective duties. Plaintiffs contend that defendant violated their rights as set forth above. Plaintiffs are informed and believe and accordingly allege defendant denies these allegations. Declaratory relief is therefore necessary and appropriate to resolve the rights and duties of the parties.

## INJUNCTIVE RELIEF ALLEGATIONS

50.    No plain, adequate, or complete remedy at law is available to plaintiffs to redress the wrongs addressed in this Complaint.

51.    If this Court does not grant the injunctive relief sought, and require the University to reinstate its women's ice hockey program, and

52.    Require the University to affirmatively demonstrate compliance with its obligation to provide equal opportunities for its female students and student athletes by, among other things,

23

taking into consideration those female students and student athletes' interests and abilities, plaintiffs and others similarly situated will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

(1)     Certify a proposed class of plaintiffs;

(2)     Enter an order declaring the University has engaged in a past and continuing pattern and practice of discrimination against female students based on their sex in violation of Title IX in:

   (a)   Its failure to consider and apply the interests and abilities of its female students to its athletics programs as exemplified by the elimination of the women's ice hockey program;

   (b)   Its manipulation of its sports rosters to simulate and conceal disparate treatment of the University's female athletes; and

(c)     other inequitable conduct resulting in the violation of violation of Title IX and the regulations promulgated thereunder.

(3)     Issue preliminary and permanent injunctions requiring the University to remediate its violations of federal law

(a) prohibiting sex discrimination by, among other required actions, providing female student athletes with treatment and benefits comparable to those provided to male student athletes and affording female students an equal opportunity to participate in school-sponsored sports, particularly intercollegiate ice hockey; and

(b) restraining the University from continuing to discriminate against female students based on sex; and

(c) requiring the University to provide female students and student athletes with an equal opportunity to participate in varsity intercollegiate athletics by sponsoring additional women's sports based upon the interests and abilities of the University's present, prospective, and future students;

(d) requiring Defendants to provide female athletes with equal athletic treatment, benefits, and financial and other resources; and

(4)    Maintain jurisdiction over this action to monitor the University's compliance with the Court's orders;

(5)    Award Plaintiffs their reasonable attorneys' fees, costs, expenses, and interest pursuant to 42 U.S.C. § 1988 and anyh other applicable provisions of federal law; and

(6)    Grant Plaintiffs such other and further relief as the Court deems appropriate.

[SIGNATURES ON NEXT PAGE]

**SIEGEL, YEE & BRUNNER**

Dated:  June 7, 2018          By:  _/s/ Dan M. Siegel_
Dan Siegel
Jane Brunner
Anne Butterfield Weills
475 14th Street, Suite 500
Oakland, California 94612
Phone (510) 839-1200
Facsimile (510) 444-6698
_danmsiegel@gmail.com_
_janebrunner@siegelyee.com_
_abweills@gmail.com_

AND

**VAN DYCK LAW FIRM, PLLC**

Sharon L. Van Dyck
310 4th Avenue South
Suite 5010
Minneapolis, MN  55415
(952) 746-1095
sharon@vandycklaw.com

***ATTORNEYS FOR PLAINTIFFS***

27